616 A.2d 954

MESA DEVELOPMENT CORPORATION, VIII, PLAINTIFF–APPELLANT, v. ROBERT W. MEYER, INDIVIDUALLY AND THE MEYER GROUP, A PARTNERSHIP, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted September 21, 1992—Decided December 1, 1992.

Before Judges PETRELLA, LONG and KEEFE.

*Kaplowitz & Wise,* attorneys for appellant (*Steven Wise,* on the brief).

*Stark & Stark,* attorneys for respondent (*Thomas B. Lewis* and *Jonathan D. Zimet,* of counsel and on the brief).

The opinion of the court was delivered by

LONG, J.A.D.

In December, 1986, plaintiff, Mesa Development Corporation, and defendants, Robert Meyer and The Meyer Group (Meyer), executed a contract which provided that Mesa was to purchase property owned by Meyer in the Township of North Brunswick for the sum of $1,850,000.00.[1] All approvals were obtained and a closing date was scheduled for January, 1989.

Prior to closing, Meyer sought to modify the provision of the Agreement which subordinated its Purchase Money Mortgage to the lien of an institutional lender for improvement and construction financing. In addition, Meyer sought to limit the amount of money Mesa could borrow from a lending institution for such construction and improvements. Mesa secured extensions on the approvals, all of which were to expire in 1990.

When an accord could not be reached, Mesa filed a complaint in the Superior Court, Chancery Division, seeking to require Meyer to abide by the terms of the Agreement and to preclude it from modifying those terms. On May 1, 1990, Mesa sought an order requiring Meyer to close title. Subsequently, the parties resolved their differences. Their settlement was memorialized in an order which required the parties to abide by the original contract with certain modifications. It recited, among other things, that

defendants agree they have no right under the terms of the Contract to demand that Plaintiff's lending institution modify its construction loan documents so as to protect Defendants' position as a second mortgage.

Section II D of the Contract was modified to reflect

that the construction and improvement financing shall be limited to $1.5 million, and further amended to indicate that plaintiff shall have a ninety (90) day period from the date of [the] order to obtain construction and improvement financing, with the understanding that should the plaintiff be unable to obtain construction and improvement financing within said ninety (90) day period due to a bank delay, and not due to the negligence of the plaintiff, that defendants shall consent to a thirty (30) day additional extension. Upon the obtaining of

---

[1] The contract was later assigned by Mesa to a successor corporation, Mesa Development Corporation, VIII.

construction and improvement financing, closing shall take place within thirty (30) days of the date of the commitment for construction and improvement financing.

Thereafter, Mesa notified Meyer that it could not close within the time prescribed in the settlement order. Negotiations over an extension ensued. Eventually, negotiations stalled and Meyer moved to enforce the settlement. Among the relief sought was a request that if Mesa failed to close within sixty (60) days of the court's order, the judge, upon *ex parte* affidavit, would enter judgment against Mesa for $1,850,000.00. Mesa filed responding papers and requested oral argument. The motion was adjourned from April 5 to April 19.

When the attorneys appeared for argument on April 19, they were advised that the motion would be decided on the papers. This occurred because Mesa's responding papers apparently were lost and the trial judge believed that the motion was unopposed. The trial judge determined that Mesa had failed to comply with the settlement and granted the relief requested in Meyer's motion—an order that Mesa close within seven days of April 25, 1991. Failing that occurrence, the judge ordered that judgment would be entered against Mesa for damages in the amount of $1,850,000.00 upon an *ex parte* affidavit by Meyer.

Mesa moved for reconsideration. The trial judge reviewed the opposition papers which originally had been misplaced and concluded that they presented nothing warranting a different disposition of the motion. Thus, reconsideration was denied. Mesa appeals both from the order enforcing the settlement and from the denial of reconsideration. We have carefully reviewed this record in light of Mesa's contentions and have concluded that a reversal and remand are in order.

The trial judge's order can be characterized in one of two ways. Mesa views it solely as a judgment for damages, noting that:

The incongruity that has been created by the trial court's decision is to grant to [Meyer] the right to enter a judgment against [Mesa] for a full purchase price of the property and still retain the property.

Meyer, on the other hand, argues that the judgment is in the nature of an order for specific performance, contending that:

> The provision for enforcement of judgment in this case is a typical means of enforcing the settlement agreement. Plaintiff's obligation is to pay money; defendant's obligation is to convey land. [It is implicit in the order that the defendants should convey this land upon plaintiff's satisfaction of the judgment and payment of the purchase price, and defendants have no objection to] modification of the order if the court deems it necessary to clarify this.

Either construction is problematic. Neither the original agreement nor the settlement provided a damage figure in case of breach. Nor did either of the agreements make provision for the automatic entry of judgment in the case of a failure to close title. It follows that there is no contractual basis revealed in this record for an order equating Meyer's damages with the purchase price of the property. Thus, the allowance of an *ex parte* application for judgment for the contract price was unwarranted. At the very least, Mesa should have been given an opportunity to be heard on the amount and measure of damages.

If, on the other hand, the order is characterized as one for specific performance, a different set of difficulties emerge. The remedy here is an unusual one—specific performance in favor of the seller of real estate. The equitable principle underlying specific performance is to grant relief where damages at law are inadequate. *Centex Homes Corp. v. Boag,* 128 *N.J.Super.* 385, 389, 320 *A.*2d 194 (Ch.Div.1974). A recognition of the uniqueness of land has given rise to a "virtual presumption" of the inadequacy of monetary damages to a buyer whose contract for the purchase of land has been breached by a seller. *Friendship Manor v. Greiman,* 244 *N.J.Super.* 104, 581 *A.*2d 893 (App.Div.1990), *certif. den.* 126 *N.J.* 321, 598 *A.*2d 881 (1991). Thus, specific performance is a fixed buyer's remedy in a land transaction case. *Centex Homes Corp., supra,* 128 *N.J.Super.* at 389, 320 *A.*2d 194.

However, the principle informing the specific performance remedy for a buyer of real estate does not apply in the case of a seller. Clearly, the uniqueness of the seller's land can provide

no reason, in ordinary circumstances, to force it on an unwilling buyer. Thus, specific performance is not just another arrow in the seller's quiver of remedies. Like the court in *Centex*, we view this remedy as "confined to those special instances where a vendor will otherwise suffer an economic injury for which his damage remedy at law will not be adequate, or where other equitable considerations require that the relief be granted." *Id.* at 393, 320 *A.*2d 194.

The trial judge should have evaluated Meyer's application in light of the principles to which we have adverted. Only after determining the inadequacy of money damages and whether the delay sought by Mesa was so inequitable as to warrant an unusual remedy should the trial judge have granted specific performance. After hearing argument on the merits of Meyer's motion, this is the task he must undertake on remand.

The trial judge is free to require such submissions and testimony from the parties as are necessary to provide a basis for findings of fact and conclusions of law as to the final remedy imposed.

Jurisdiction is not retained.